## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| HEARTHSIDE BAKING CO., INC., | ) | Case No. 08 B 01187 |
| | ) | |
| Debtor. | ) | Hon. Jacqueline P. Cox |

### MEMORANDUM OPINION

In this matter, the Official Committee of Unsecured Creditors (the "Committee") moved for an order authorizing the Committee to change the beneficiary of or to surrender an insurance policy owned by the debtor, Hearthside Baking Co., Inc. d/b/a Maurice Lenell Cooky Company (the "Debtor"), pursuant to 11 U.S.C. §§ 105, 363(b), 1103(c), and 1109(b). The Committee subsequently withdrew the motion and requested entry of an order directing the Debtor to surrender the insurance policy. The Committee's motion was denied after a hearing on November 20, 2008. The following sets forth the reasons for the Court's decision.

### I. JURISDICTION

The Court has jurisdiction to decide this matter pursuant to 28 U.S.C. § 1334 and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. This matter is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A), (B), (C), and (O).

### II. BACKGROUND

Four of the Debtor's creditors filed an involuntary bankruptcy petition against the Debtor on January 18, 2008. Two additional creditors later joined the involuntary petition. The Debtor consented to the entry of an order for relief in the bankruptcy case on February 13, 2008 and converted its bankruptcy case to one under chapter 11 of the Bankruptcy Code. On February 22, 2008, the Committee was formed by the United States Trustee to represent the interests of unsecured

creditors of the estate.

The Debtor filed its schedules and its Statement of Financial Affairs on March 14, 2008. In the schedules, the Debtor included a life insurance policy, Policy No. 2-115-596V (the "Policy")[1], issued by Minnesota Mutual Life Insurance Company ("Minnesota Mutual") indemnifying the life of Terry Cohen ("Terry"), the Debtor's president and CEO, for $3,000,000. (Comm. Motion, Ex. B, pg. 3, Case no. 08 BK 01187, Docket no. 173) The schedules list the value of the Policy as "unknown" but indicate that it has a cash surrender value of "approx. $240,000." *Id.*

Ownership of the Policy was the crux of this dispute. On December 5, 1997, the Terry Jay Cohen Trust (the "Trust"), the owner and designated beneficiary of the Policy, executed an assignment. The issue herein is the scope of this purported assignment. The Committee sought to foreclose on the Policy and avers that the Trust, through its trustee Miriam Cohen ("Miriam"), assigned all of the rights of the Policy to the Debtor. Further, the Committee expressed worry that the Policy's premium payments are not being timely paid but are instead being paid from the accumulated cash value of the Policy as a loan, diminishing the Policy's value. Conversely, Terry and the Trust argued that the purported assignment was limited in scope. Wayne Cohen ("Wayne"), the former president of the Debtor and Terry's brother, also opposed the Committee's efforts and claims an ownership interest in the Policy. Notably, Wayne made a procedural argument, stating that the Committee may seek this type of relief only via an adversary proceeding as required by Federal Rule of Bankruptcy Procedure 7001(2).

---

[1] In its motion, the Committee sought relief against Policy No. 2-115-596<u>0</u>. However, Terry Cohen and the Terry Cohen Trust argued that the policy at issue is actually Policy No. 2-115-596<u>V</u>. In its Reply, the Committee acknowledged this error and subsequently sought new relief, seeking an order to direct the Debtor to surrender Policy No. 2-115-596<u>V</u>.

To support their position, Terry and the Trust pointed to specific facts surrounding the execution of the purported assignment. In October 1996, Miriam, as trustee of the Trust, executed a document titled "Hearthside Baking Company, Inc. Executive Split Dollar Insurance Agreement" (the "Agreement"). This document was executed by both Miriam and the Debtor, with the approval of its Board of Directors. The Agreement contained a collateral assignment relating to an insurance policy insuring Terry's life that was to be procured for the benefit of the Trust. The collateral assignment assigned to the Debtor the following specific rights:

> (a) [t]he right to prohibit the Assignor's borrowing or withdrawal from or surrender of any part of the Policy;
>
> (b) [t]he right to obtain, upon surrender of the Policy by the Assignor, an amount of the cash surrender proceeds up to the amount of the Assignee's Interest in the Policy; and
>
> (c) [t]he right to collect, upon the insured's death, the net proceeds of the Policy up to the amount of the Assignee's Interest in the Policy.

(Hearthside Baking Company, Inc. Executive Split Dollar Insurance Agreement, Exhibit A, attached as Ex. A to the Declaration of Miriam Cohen [Terry Cohen and the Terry Cohen Ins. Trust's Memo. in Opposition to the Unsec. Creditors' Comm. Motion to Change Ins. Policy Beneficiary (herein after "Terry Memo"), Ex. 1, pg. 1, Case No. 08 BK 01187, Docket no. 189]).

The Agreement does not provide for substitution of the Debtor as the Policy's beneficiary; it provides that the beneficiary will be paid from the proceeds of the Policy upon Terry's death minus premium payments made by the Debtor which are to be reimbursed to the Debtor. *Id.* at pg. 2. It provides similar relief to the Debtor upon surrender of the policy. *Id.* at pg. 3.

On November 14, 1997, as provided for by the Agreement, Minnesota Mutual issued Policy No. 2-115-596V insuring the life of Terry for $3,000,000 with the Trust as the Policy's owner and beneficiary. Shortly thereafter, Rick Shapiro, the Minnesota Mutual Insurance agent who procured

3

the Policy, presented to Miriam a document titled "Assignment of Policy as Collateral." The parties understood the purpose of this document was to assign only the specific rights under the Policy that were outlined in the Agreement. (Declaration of Miriam Cohen, ¶ 5, attached as Ex.1 to Terry Memo; Declaration of Rick Shapiro, ¶ 6, attached as Ex. 3 to Terry Memo). Miriam executed the document on behalf of the Trust on November 17, 1997. Since execution of this document, Minnesota Mutual has issued annual reviews of the Policy listing the Trust as the Policy's owner and beneficiary. The amount of the annual premium payments required under the Policy is $38,621. The Debtor has paid $77,890.10 of the annual premiums since the Policy was issued. Other payments were made by Terry.

### III. DISCUSSION

The first issue raised was what the purported assignment actually entailed. In Illinois, an assignment occurs when there is a transfer of an identifiable interest from the assignor to an assignee. *Stoller v. Exchange Nat'l Bank*, 557 N.E.2d 438, 443, 199 Ill.App.3d 674, 681 (Ill. App. Ct. 1990); *see also Clarin Corp. v. Massachusetts Gen. Life Ins. Co.*, 44 F.3d 471, 476 (7th Cir. 1994) (citing *Stoller*). A valid assignment evidencing "the intent of the assignor to vest ownership of the subject matter of the assignment in the assignee" is sufficient. *Stoller*, 557 N.E.2d at 443, 199 Ill.App.3d at 681. An assignment needs only to describe the subject matter of the assignment "with sufficient particularity to render it capable of identification." *Id.* The intent of the parties to an assignment must be found both from the executed instrument and the circumstances surrounding execution of the document. *Id.*

In this case, it is clear from examining the purported assignment and the circumstances surrounding the assignment's execution that the parties involved did not intend a total assignment

4

of the Policy from the Trust to the Debtor. The Agreement between the Debtor and the Trust clearly state three specific rights in the Policy that the Trust would assign to the Debtor. Further, affidavits from the parties involved indicate that limited rights in the Policy were actually assigned. Terry, who was then on the Debtor's board of directors; Miriam, acting on behalf of the Trust; and the agent from Minnesota Mutual, who procured the Policy and drafted the assignment, all swore that the assignment was pursued to assign limited rights in the Policy. Moreover, since the occurrence of the purported assignment, the annual reviews of the Policy list the owner and beneficiary of the Policy as the Trust. The document indicates that the Trust did not assign all of its rights and interests in the Policy to the Debtor, obviating the Committee's request to foreclose on it.

There is additional support for the conclusion that the Policy does not belong to the Debtor. The Agreement provides that the Debtor's obligation to pay the premiums terminates upon the occurrence of certain events. These events, listed in the Agreement, are the following:

> This Agreement and the Corporation's obligation to pay premiums on the Policy, shall automatically terminate upon the happening of any of the following events:
>
> (a) [a]t the option of the Corporation, if the Employee terminates employment for any reason other than death. The Employee's employment shall not terminate during any period in which he is "permanently disabled" (defined below);
>
> (b) [a]t the surrender, lapse or termination of the Policy;
>
> (c) [u]pon delivery by the Owner of written notice of termination of this Agreement; and
>
> (d) [u]pon written agreement of the parties.

(Art. IV of the Hearthside Baking Company, Inc. Executive Split Dollar Insurance Agreement, attached as Ex. A to the Declaration of Miriam Cohen, Terry Memo, Ex. 1, pg. 3, Case No. 08 BK 01187, Docket No. 189).

The Committee did not allege that any of the above has occurred which would signal termination

5

of the Policy, not a change in ownership. The Trust retains ownership of the Policy and the Debtor is obligated to pay the premiums. As such, it is not possible to foreclose upon the Policy since it is not property of the Debtor.

As an aside, the Committee chose the incorrect vehicle for obtaining the relief it seeks. The Committee sought an interest in the Policy under 11 U.S.C. §§ 105(a), 363(b), 1103(c), and 1109(b). However, Fed.R.Bankr.P. 7001(2) requires that an adversary proceeding be commenced "to determine the validity, priority, or extent of a lien or other interest in property[.]" Fed.R.Bankr.P. 7001(2); *see also In re Whitehall Jewelers Holdings, Inc.*, 2008 WL 2951974 *6 (Bankr. D. Del. 2008) (holding "The Court cannot determine whether the [property is] property of the estate through a contested matter, such as a sale motion under Section 363. Federal Rule of Bankruptcy Procedure 7001(2) requires that an adversary proceeding be commenced to determine the 'validity, priority or extent of [an] interest in property.'"). Therefore, the relief the Committee sought cannot be granted via a motion.

In addition, since the Agreement requires future performance by the Debtor and the Trust, i.e., payment of premiums and the continued employment of Terry, it may be an executory contract. 11 U.S.C. § 365(a). If the Debtor wants to benefit from that contract, it may have to assume it under 11 U.S.C. § 365(b)(1) and promptly cure any defaults. This issue was not addressed in the pleadings herein.

6

## IV. CONCLUSION

For the reasons stated above, the Committee's motion to substitute beneficiaries and to direct the Debtor to foreclose upon the Policy is DENIED.

DATED: December 3, 2008

ENTER:

_____
Jacqueline P. Cox
United States Bankruptcy Judge