## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | Chapter 11 |
| | ) | |
| HEARTHSIDE BAKING CO., INC. | ) | Case No. 08-01187 |
| d/b/a MAURICE LENELL COOKY | ) | |
| COMPANY, | ) | Honorable Jacqueline P. Cox |
| | ) | |
| Debtor. | ) | Hearing Date and Time: |
| | ) | June 9, 2009 at 9:30 a.m. |

### NOTICE OF MOTION

TO:  Attached Service List

**PLEASE TAKE  NOTICE** that on Tuesday, the 9th day of June, 2009, at the hour of 9:30 a.m., we shall appear before the Honorable Jacqueline P. Cox, United States Bankruptcy Judge for the Northern District of Illinois, or any Judge sitting in her place and stead, in courtroom 619 of the United States Courthouse, 219 South Dearborn Street, Chicago, Illinois, and then and there present the **MOTION OF ADELMAN & GETTLEMAN, LTD. FOR ALLOWANCE OF FINAL COMPENSATION AND REIMBURSEMENT OF EXPENSES AS COUNSEL TO HEARTHSIDE BAKING CO., INC. D/B/A/ MAURICE LENELL COOKY COMPANY, DEBTOR IN POSSESSION** (the **"Motion"**), a copy of which is attached hereto and hereby served upon you.

> CHAD H. GETTLEMAN, ESQ. (ARDC #944858)
> ADAM P. SILVERMAN, ESQ. (ARDC #6256676)
> ADELMAN & GETTLEMAN, LTD.
> 53 West Jackson Boulevard, Suite 1050
> Chicago, Illinois 60604
> 312/435-1050

### CERTIFICATE OF SERVICE

I hereby certify that a true copy of this Notice of Motion and the Motion referred to herein have been served upon the persons listed on the attached service list as indicated on the 23rd day of April, 2009.

> _____/s/ Adam P. Silverman_____
> Adam P. Silverman, Esq.

81972.1 4/23/09

## SERVICE LIST

**VIA ECF AND FACSIMILE**

Richard C. Friedman, Esq.
Office of the United States Trustee
Dirksen Federal Court House
219 South Dearborn Street, Suite 873
Chicago, IL 60604
Fax: (312) 886-5794
Email: richard.c.friedman@usdoj.gov

Joseph D. Frank, Esq.
Jeremy C Kleinman, Esq.
Frank/Gecker LLP
325 N. LaSalle St., Suite 625
Chicago, IL 60610
Fax: (312) 276-0035
Email: jfrank@fgllp.com
        Jkleinman@fgllp.com

Robert D. Nachman, Esq.
Martin W. Salzman, Esq.
Morgan M. Smith, Esq.
Dykema Gossett PLLC
10 South Wacker Dr., Suite 2300
Chicago, IL 60606
Fax: (312) 876-1155
Email: rnachman@dykema.com
        msalzman@dykema.com
        mmsmith@dykema.com

Richard C. Perna, Esq.
Tejal S. Desai, Esq.
Fuchs & Roselli, Ltd.
440 W. Randolph Street, Suite 500
Chicago, Illinois 60606
Fax (312) 651-2499
Email: tdesai@frltd.com

**VIA FIRST CLASS US MAIL**
**(Deposited in Post Office 4/24/09)**

Thomas J. Verticchio, Esq.
Swanson, Martin & Bell, LLP
330 N. Wabash Ave., Suite 3300
Chicago, IL 60611
Fax: (312) 321-0990
Email: tverticchio@smbtrials.com

Stephen Scallan, Esq.
Michael Cohen, Esq.
Staes & Scallan, PC
111 W. Washington St., Suite 1310
Chicago, IL 60602
Fax: (312) 201-9233
Email: stevescallan@covad.net
        mcohen@staesandscallan.com

Robert A. Langendorf, Esq.
Robert A. Langendorf PC
134 N. LaSalle St., Suite 1515
Chicago, IL 60602
Fax: (312) 377-1771
Email: rlangendorf@comcast.net

Alan R. Dolinko, Esq.
Robinson Curley & Clayton, PC
300 S. Wacker Dr., Suite 1700
Chicago, IL 60606
Fax: (312) 663-0303
Email: adolinko@robinsoncurley.com

Monte L. Mann, Esq.
John Shonkwiler, Esq.
Novak and Macey, LLP
100 N. Riverside Plaza
Chicago, IL 60606
Fax: (312) 419-6928
Email: mmann@novackandmacey.com
        Jfs@novackandmacey.com

Bruce L. Wald, Esq.
Jeffrey B.Rose Esq.
Tishler & Wald, Ltd.
200 S. Wacker Drive, Suite 3000
Chicago, Illinois 60606
Fax: (312) 876-3816
Email: bwald@tishlerandwald.com
        Jrose@tishlerandwald.com

Hearthside Baking Co., Inc.
c/o Terry J. Cohen
3345 Sunset Trail
Northbrook, IL 60062
Email: t.cohen@comcast.net

81972.1 4/23/09                                              2

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | Chapter 11 |
| | ) | |
| HEARTHSIDE BAKING CO., INC. | ) | Case No. 08-01187 |
| d/b/a MAURICE LENELL COOKY | ) | |
| COMPANY, | ) | Honorable Jacqueline P. Cox |
| | ) | |
| Debtor. | ) | Hearing Date and Time: |
| | ) | June 9, 2009 at 9:30 a.m. |

**MOTION OF ADELMAN & GETTLEMAN, LTD. FOR ALLOWANCE OF FINAL COMPENSATION AND REIMBURSEMENT OF EXPENSES AS COUNSEL TO HEARTHSIDE BAKING CO., INC. D/B/A/ MAURICE LENELL COOKY COMPANY, DEBTOR IN POSSESSION**

CHAD H. GETTLEMAN, ESQ. (ARDC #944858)
ADAM P. SILVERMAN, ESQ. (ARDC #6256676)
ADELMAN & GETTLEMAN, LTD.
53 West Jackson Boulevard, Suite 1050
Chicago, Illinois 60604
Phone: 312/435-1050

82784.1 4/23/09

## TABLE OF CONTENTS

I.      INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.     HISTORY OF THE COMPANY AND CHAPTER 11 CASE . . . . . . . . . . . . . . . . . . . . 8
        A.     History of the Company and Events Leading to Chapter 11. . . . . . . . . . . . . . . 8
        B.     Debtor in Possession . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
        C.     Current Status of the Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

III.    LEGAL SERVICES RENDERED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
        A.     ADMINISTRATIVE MATTERS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
        B.     CASH COLLATERAL / OPERATIONAL FUNDING . . . . . . . . . . . . . . . . . . 24
        C.     ASSET SALES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26
        D.     COMMON CARRIERS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34
        E.     PLAN OF REORGANIZATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38
        F.     FEE PETITION PREPARATION    . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

IV.     STANDARDS FOR REVIEW OF MOTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40
               Form of Motion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42
               1.     Itemized Daily Entries . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42
               2.     Telephone Conferences . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42
               3.     Meetings and Office Conferences . . . . . . . . . . . . . . . . . . . . . . . . 42
               4.     Drafting . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42
               5.     Legal Research . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42
               6.     Minimum Time . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43
               7.     Lumping . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

V.      BILLING JUDGMENT AND AVOIDANCE OF DUPLICATION OF SERVICES . . . 44
        A.     Individual Responsibility . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45
        B.     Court Appearances and Meetings . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45
        C.     Appropriate Level of Skill . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46
        D.     Legal Research . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46
        E.     Document Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

VI.     QUALIFICATIONS OF MOVANT; PRECLUSION OF EMPLOYMENT DUE TO
        ACCEPTANCE OF THIS CASE; AND COST OF COMPARABLE SERVICES . . . . 46

VII.    MOVANT'S STATEMENT PURSUANT TO §§ 329 AND 504 OF THE
        BANKRUPTCY CODE AND BANKRUPTCY RULE 2016 . . . . . . . . . . . . . . . . . . 51

VIII.   CONCLUSION AND REQUEST FOR ALLOWANCE AND PAYMENT OF FINAL
        COMPENSATION AND REIMBURSEMENT OF EXPENSES . . . . . . . . . . . . . . . . 51

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | Chapter 11 |
| | ) | |
| HEARTHSIDE BAKING CO., INC. | ) | Case No. 08-01187 |
| d/b/a MAURICE LENELL COOKY | ) | |
| COMPANY, | ) | Honorable Jacqueline P. Cox |
| | ) | |
| Debtor. | ) | |

## MOTION OF ADELMAN & GETTLEMAN, LTD. FOR ALLOWANCE OF FINAL COMPENSATION AND REIMBURSEMENT OF EXPENSES AS COUNSEL TO HEARTHSIDE BAKING CO., INC. D/B/A/ MAURICE LENELL COOKY COMPANY, DEBTOR IN POSSESSION

TO:    THE HONORABLE JACQUELINE P. COX,
       U.S. BANKRUPTCY JUDGE:

Now come Chad H. Gettleman and Adam P. Silverman on behalf of Adelman &

Gettleman, Ltd. (**"Movant"**), counsel to Hearthside Baking Co., Inc. d/b/a Maurice Lenell Cooky

Company, an Illinois corporation, debtor herein (**"Hearthside"**, the **"Company"** or the

**"Debtor"**), and requests the entry of an order for the allowance and payment of final

compensation and reimbursement of ordinary and necessary expenses incurred in connection

therewith as counsel to the Debtor during the pendency of this case under Chapter 11 of the

United States Bankruptcy Code (the **"Code"**), pursuant to Section 330 of the Bankruptcy Code

and Bankruptcy Rule 2016, and in support thereof, respectfully states as follows:

## I.
## INTRODUCTION

This motion (the **"Motion"**) encompasses the almost 15 month period from February 13,

2008, the date on which the Debtor converted an involuntary Chapter 7 case filed against it to a

82564.2 4/23/09

voluntary case under Chapter 11 through April 23, 2009, the date that the Court set as the

administrative claims bar date for the Debtor's bankruptcy counsel and accountants to file a

request for allowance of compensation in the Chapter 11 Case (the "**Chapter 11 Period**").

Since its inception, the Debtor was a family owned business and enjoyed many years of

success. The Debtor's business was highly seasonal with approximately 50% - 60% of its

annual revenues attributable to year end holiday sales. The vast majority of the Debtor's annual

sales are to large national retailers. Like many other manufactures, in recent years, the Debtor

began to suffer from increasing costs, including raw material, labor and freight costs.  The

ultimate blow was when the Company was unexpectedly informed by its secured lender in

December 2007 that once the Debtor's borrowing arrangements with the bank matured on

January 31, 2008, they would not be renewed. It appeared that the loss of continued secured

financing was caused by operating losses, certain internal disputes among the Debtor's

management, the recent acquisition of the Debtor's secured lender by a different financial

institution, and the departure of the prior bank officers who had handled the Debtor's account.

Although the new secured lender did agree to extend the Debtor's financing arrangements

for an additional two months after the loan maturity through and including March 31, 2008, the

Debtor was forced to immediately begin the process of attempting to obtain new secured lending

arrangements. Given a pending sale of the Debtor's leased facilities by its affiliate, the Debtor

also faced the need to relocate. All of these issues combined with the filing of the involuntary

chapter 7 case made the Debtor's ability to attract replacement long term financing sources

virtually impossible. Without the ability to assure customers of being able to fulfill their orders

for the balance of 2008 year, including the all important holiday season, the Debtor was required

to solicit offers to purchase its business as a going concern in an effort to preserve jobs and maximize the value of its assets for the benefit of all creditors.

Clearly, one of the primary reasons for the turmoil surrounding the Debtor both before and after the involuntary case was filed was the incredibly contentious family feud that Movant inherited when it was engaged by the Company. The disputes between the Debtor's owners and insiders had been going on for many years and, at the commencement of the involuntary case, had already involved extremely costly and protracted litigation between the parties. While Movant did its best not to take sides between individual members of the Debtor's management, and continually tried to maintain a sense of common purpose between the parties in order to have a successful Chapter 11 case, this proved to be essentially impossible. Never in over 30 years of practice in the bankruptcy arena had members of Movant experienced the extreme and constant level of animosity that existed between some of the parties. These problems not only infected numerous and critical pre-petition decisions made by the Company, but invariably spilled over into the Chapter 11 Case and pervaded almost every aspect of Movant's services, making the Chapter 11 Case among the most difficult, contentious, and dynamic bankruptcy cases which Movant had ever handled. In addition to all of the customary economic challenges facing an operating Chapter 11 debtor's counsel, Movant was also faced with the incredibly unpleasant and difficult task of managing emotionally charged issues, and trying to maintain a delicate equilibrium within the Chapter 11 Case. As this Court knows from the sole adversary proceeding currently before it, essentially every matter within the Chapter 11 Case was tainted by the family disputes, creating an environment of total mistrust and hostility from day one. In turn, this required Movant to expend significant additional efforts toward promoting peace and

avoiding implosion of the Chapter 11 Case in the effort to bring about the best result for all of the

creditors as was possible under the circumstances.

To further compound the situation, the Debtor's operations, management and/or

ownership structure was such that: (a) its computer accounting and inventory system had recently

been changed, rendering the Debtor's financial reports virtually incapable of objective

verification and requiring Movant to unravel them; (b) it had lost its ability to borrow money

right before the highest point of its selling season; (c) its former president had recently left

employment with the Debtor and was alleged not to have performed services for which he was

compensated; (d) its new president was appointed amidst a sphere of controversy between the

family as well as between independent, third party creditors of the Debtor; (e) its shareholder-

trustees were alleged to have committed breaches of fiduciary duty; and (f) it had no full-time,

experienced chief financial officer to handle the rigorous needs of a hotly contested Chapter 11

case.  Accordingly, and as described in more detail below, the Chapter 11 Case was a labor

intensive case providing Movant with an almost daily procession of challenging issues which

Movant worked diligently to resolve in an expeditious, efficient, and professional manner.

Movant has not filed any prior motions for the allowance of interim compensation in the

Chapter 11 Case. However, pursuant to that certain *Order Establishing Procedures for the

Payment of Monthly Interim Compensation and Reimbursement of Expenses of Professionals*

entered in the Chapter 11 Case on March 13, 2008, all court appointed professionals for the

Debtor, including, Movant, were entitled to submit and receive payment on monthly invoices

beginning with services rendered from and after the commencement of the Chapter 11 Case,

provided that no timely objections were filed[1] (**"Monthly Payment Order"**). To that end, as more fully described below, and pursuant to the Monthly Payment Order, Movant received monthly payments totaling $295,004.35 of fees and $3,120.68 in expenses (collectively, the **"Monthly Payments"**). As part of the monthly payment process, and as an accommodation to estate, <u>Movant has to date, voluntarily reduced its fees in the aggregate amount of $22,731.00, representing an average reduction of over 6% of every monthly request</u>. As of the commencement of the Chapter 11 Case, Movant held a prepayment in the amount of $25,000 from the Debtor for services to be rendered, and costs to be incurred, as counsel to the debtor in possession in Chapter 11 Case[2]. This prepayment was applied to the Debtor's first request for monthly interim compensation in April 2008 pursuant to the Monthly Payment Order.

Payments requested and Monthly Payments received by Movant pursuant to the Monthly Payment Order may be summarized as follows (months in which services are rendered are reflected):

| MONTH | FEES INCURRED | VOL. REDUCTION | HOLDBACK | FEES RECEIVED | COSTS INCURRED | COSTS RECEIVED | TOTAL PAID | BAL. UNPAID |
|---|---|---|---|---|---|---|---|---|
| Feb 13 -Mar 30, 2008 | $110,690.00 | $ (8,569.00) | $ (7,712.10) | $ (94,408.90) | $ 279.70 | $ (279.70) | $ (94,688.60) | $ 7,432.40 |
| April 08 | $ 71,216.50 | $ (5,000.00) | $ (6,621.65) | $ (59,594.85) | $ 1,031.27 | $ (1,031.27) | $ (60,626.12) | $ 6,621.65 |
| May 08 | $ 54,475.50 | $ (2,723.78) | $ (5,175.17) | $ (46,576.55) | $ 504.01 | $ (504.01) | $ (47,080.56) | $ 5,175.17 |
| June 08 | $ 41,490.00 | $ (2,074.50) | $ (3,941.55) | $ (35,473.95) | $ 570.74 | $ (570.74) | $ (36,044.69) | $ 3,941.55 |

[1]There were never any objections filed to any of Movant's monthly invoivces.

[2]Movant was initially retained by the Debtor for a short consultation on or about November 28, 2009 and received a prepayment in the amount of $15,000 on December 28, 2007. As matters escalated and Movant's substantial involvement was sought, Movant received an additional prepayment of $50,000 on February 6, 2008 for services to be rendered. Through and including February 12, 2008, the day before the conversion to the Chapter 11 Case, Movant incurred attorneys' fees and costs in the amount of $46,645.77, but agreed to waive $6,645.77 and utilize $25,000 of its prepayment for services to be rendered in the Chapter 11 Case. As such, as of the commencement of this Chapter 11 Case, Movant held a $25,000 prepayment for services to be rendered and costs to be incurred herein.

| MONTH | FEES INCURRED | VOL. REDUCTION | HOLDBACK | FEES RECEIVED | COSTS INCURRED | COSTS RECEIVED | TOTAL PAID | BAL. UNPAID |
|---|---|---|---|---|---|---|---|---|
| July 08 | $ 19,256.50 | $ (962.83) | $ (1,829.37) | $ (16,464.30) | $ 88.34 | $ (88.34) | $ (16,552.64) | $ 1,829.37 |
| Aug 08 | $ 16,951.50 | $ (847.58) | $ (1,610.39) | $ (14,493.53) | $ 258.18 | $ (258.18) | $ (14,751.71) | $ 1,610.39 |
| Sept 08 | $ 13,090.00 | $ (654.50) | $ (1,243.55) | $ (11,191.95) | $ 18.44 | $ (18.44) | $ (11,210.39) | $ 1,243.55 |
| Oct 08 | $ 7,502.00 | $ (375.10) | $ (712.69) | $ (6,414.21) | $ 195.10 | $ (195.10) | $ (6,609.31) | $ 712.69 |
| Nov 08 | $ 4,521.00 | $ (226.05) | $ (429.49) | $ (3,865.46) | $ 151.41 | $ (151.41) | $ (4,016.87) | $ 429.49 |
| Dec 08 | $ 3,438.00 | $ (171.90) | $ (326.61) | $ 0.00 | $ 74.79 | $ 0.00 | $ 0.00 | $ 3,340.89 |
| Jan 09 | $ 7,626.50 | $ (381.33) | $ (724.52) | $ (6,520.65) | $ 23.49 | $ (23.49) | $ (6,544.14) | $ 724.52 |
| Feb 09 | $ 12,952.50 | $ (647.63) | N/A | $ 0.00 | $ 61.27 | $ 0.00 | $ 0.00 | $12,366.14 |
| Mar 09 | $ 1,936.00 | N/A | N/A | $ 0.00 | $ 69.90 | $ 0.00 | $ 0.00 | $ 2,005.90 |
| Apr 1 - 23, 2009 | $ 15,191.00 | N/A | N/A | $ 0.00 | $ 160.37 | $ 0.00 | $ 0.00 | $15,351.37 |
| Total | $380,337.00 | $ (22,634.20) | $ (30,327.09) | $(295,004.35) | $ 3,487.01[3] | $ (3,120.68) | $(298,125.03) | $62,785.08 |

Copies of Movant's monthly cover letters and related detailed statement of services rendered and costs incurred for each of the above months (collectively, the **"Monthly Statements"**) are attached hereto as **Exhibits 1 through 12** and made a part hereof (separately labeled exhibit divider pages corresponding to the category of services rendered during each such month are incorporated into each of the Monthly Statements)[4].

Also attached hereto as **Exhibit 13** and made a part hereof is a detailed statement of services rendered by Movant and costs incurred for the period of March 1, 2009 through April 23, 2009, for which no Monthly Statements were submitted, including time spent in the preparation of

---

[3]In preparing this Motion, Movant realized that some of its copy charges were incurred at $.20 per page. Movant has recalculated these charges to reflect a charge of $.10 per page, which reduces the costs incurred by $357.70, from $3,487 to $3,129.31. For the purpose of this table, the "Balance Unpaid" column should be similarly reduced by $357.70, from $62,785.08 to $62,477.38. All calculations used herein reflect this correction. Movant has not made changes to this table so that all columns continue to aggregate to the row entitled "Total."

[4]Upon the issuance of each of the Monthly Statements, Movant's time and billing system treats such statement as final, and therefore does not allow each of the Monthly Statements to be re-printed in a combined manner with all of the other Monthly Statements. As such, each Monthly Statement is attached hereto separately, but are summarized below in the aggregate by category and attorney.

this Motion (collectively, the **"Final Period"**), along with separately labeled exhibit divider pages

corresponding to the category of services rendering during said Final Period, if applicable.

As more fully described in this Motion, inclusive of all remaining unpaid compensation

and costs as reflected in the Monthly Statements and during the Final Period, after application of

Movant's prepayment, there remains the sum of $62,468.75 due and owing Movant for legal

services rendered during the Chapter 11 Period, including the preparation of this Motion, and the

sum of $8.63 for costs incurred.

In total, as reflected herein, Movant has expended approximately 948.20 hours of

professional legal services during the Chapter 11 Period and requests allowance and payment of

final compensation for services rendered therein in the amount of $380,337.00 (the additional

compensation requested after application of Monthly Payments and Movant's $25,000

prepayment is $62,468.75) and reimbursement of ordinary and necessary expenses incurred in

connection therewith in the amount of $3,129.31 (the additional expense reimbursements

requested after application of expense reimbursements received pursuant to the Monthly Payment

Order is $8.63).

Movant submits that the efforts put forth and the results achieved to date amply support

the allowance of final compensation requested herein. Movant has acted as consultant, negotiator,

arbitrator, analyst, draftsman and legal advisor.  Movant guided the Debtor through numerous

issues which arose in this case. Movant assisted the Creditors' Committee (**"Committee"**) in

almost every aspect of this case during the Chapter 11 Period. At present, it is anticipated that

there will ultimately be a distribution made to unsecured creditors in this very difficult case.

Movant's efforts did not come easily, as many of the issues which arose were initially contested.

As more fully set forth below, Movant expended significant efforts throughout the entire Chapter 11 Period and at all times, endeavored to maximize the value of all assets in this estate for the benefit of all creditors and other interested parties herein and minimize the expenses incurred in connection therewith.  The distinctly adverse interests of many of the parties during this case consistently confronted Movant with continuous, formidable challenges which Movant addressed professionally, efficiently and expeditiously.

**II.**
**HISTORY OF THE COMPANY AND CHAPTER 11 CASE**

**A.**   **History of the Company and Events Leading to Chapter 11.**

The Debtor was engaged in the business of manufacturing, sales and distribution of specialty cookie products since 1937, and prior to the Court approved sale of its assets, did business throughout the United States and Mexico. Annual retail, mail order and web-based sales during 2007 were approximately $13,000,000.

The Debtor is a privately owned Illinois corporation which operated from its principal place of business, a leased 58,000 square foot corporate headquarters, retail center and manufacturing and warehouse facility located at 4474 N. Harlem Avenue, Norridge, IL 60706.

The Debtor's business was highly seasonal with approximately 50% - 60% of its annual revenues attributable to year end holiday sales. The vast majority of the Debtor's annual sales were to large national retailers, such as Wal-Mart, Walgreens, and CVS Drugs. Typically,  the months of January - April were the slowest part of the year. However, beginning in spring, the Debtor would usually begin to receive orders and requests from its customers for product

manufacturing commitments for the upcoming holiday season, as much of its products were included in holiday catalogues which the retailers begin to prepare and format by the summer.

Prior to the Chapter 11 Period, the Debtor had financed its operations largely through its primary secured lender, LaSalle Bank, National Association (**"Bank"**). Generally, in years past, the Debtor's borrowings with the Bank would be greatly reduced by year end from the collection of receivables due from its holiday sales, and then begin to climb when the Debtor would again borrow funds on its line of credit to address its trade debt obligations from the previous holiday season.

As mentioned, the Bank unexpectedly informed the Debtor in late 2007 that once the Debtor's borrowing arrangements with the Bank matured on January 31, 2008, the Bank, in light of the internal disputes among the Debtor's management, as well as the Bank's recent acquisition by Bank of America, NA and the departure of the prior Bank officers who had handled the Debtor's account, would not renew the Debtor's borrowing arrangements, and would not extend the current arrangements for more than an additional two months after the loan maturity through and including March 31, 2008. As a result, at the time the involuntary petition was filed against the Debtor, the Debtor was in the process of attempting to obtain new financing from alternative lenders to replace its prior arrangements with the Bank. The involuntary petition made the Debtor's ability to attract replacement long term financing sources highly doubtful.

**B.     Debtor in Possession**

As a result of its financing woes, the Debtor's primary concern from the very beginning of the Chapter 11 Case was to continue operating as a going concern while marketing its assets for sale to maximize value to the estate.  Other than approximately $1,000,000 of accounts receivable

(face value), limited inventory, and machinery and equipment consisting primarily of conveyor

equipment and two ovens of limited value, the Debtor's principal assets were comprised of an

intangible nature, being the Debtor's reputation for the quality of its products and the customer

relationships it had developed over the years resulting in a steady stream of orders every year.

Absent long term financing, the Debtor could not assure its customers that the Debtor was able to

fulfill their orders for the balance of this year, including the all important upcoming holiday

season. The Debtor was extremely concerned that its inability to provide its customers with

binding commitments during the initial phase of the Chapter 11 Period would prompt each of its

national customers to quickly look for alternative sources. The loss of any major customers could

easily cause the Debtor's business to no longer be saleable as a going concern. This would have

resulted in the Debtor having to liquidate its tangible assets, losing the value of its intangible

property, and not being able to generate a meaningful result for its unsecured creditors.

In analyzing the ramifications of filing the Chapter 11 Case, and alternatives thereto, the

Debtor had extensively considered the primary means of successfully concluding this Chapter 11

Case in the best interests of all parties, such alternatives being a sale of the assets as a going

concern, or the formulation and confirmation of an internal plan of reorganization.

The Debtor determined, however, that its ability to obtain the necessary long

term funding needed to support an internal plan of reorganization would not likely be

forthcoming. The Debtor believed that to undertake such effort, while postponing any sale effort,

would have quickly and seriously impaired the value of the assets in its estate and delayed and

diminished any ultimate distribution to the creditors herein. As a result, the Debtor concluded that

it was in the best interest of the estate and the Debtor's creditors to immediately entertain offers to

acquire substantially all of Debtor's assets as a going concern on an expedited basis. The Debtor

believed that any significant delay in embarking upon a sale process would have had a materially

adverse effect on the value of the assets being offered for sale, given the administrative costs of

the Chapter 11 Case, a continuing decline in sales volumes due to the inability to fulfill customer

commitments, and the resulting limitations on the cash flow needed to continue operations.

A major focus of Movant's efforts during the entire Chapter 11 Period consisted of

working very closely with counsel for the Committee on virtually every aspect of the Debtor's

operational and liquidation efforts. As the Court is well aware, there have been substantial

disputes and litigation between the bankruptcy estate and the Debtor's president and other insiders

since the commencement of the Chapter 11 Case, most of which continues to this date. It was

apparent to Movant from the outset of the Chapter 11 Case that the Debtor's limited ability to

operate and market its assets for sale made it beneficial to continue the Debtor's management in

place during the operational and sale phases of the Chapter 11 Case. However, it was equally

evident to Movant that it was obviously completely unrealistic to expect the Debtor's insiders to

examine their own transactions with the Company and take action if appropriate. To that end,

Movant fully explained these issues to the Debtor's management, and strongly recommended that

their fiduciary duties required turning over this aspect of the Chapter 11 Case to the Committee.

To management's credit, the Debtor authorized Movant to proceed with Movant's

recommendations in this regard, and Movant actively supported the Committee's counsel's efforts

to obtain the entry of the necessary court order allowing the Committee to examine, and if

appropriate, bring any and all causes of action in the name of the estate. Needless to say, the

tightrope Movant was required to walk to keep all parties focused on selling the business during

the initial months of the Chapter 11 Case while the impending issues between the Debtor's

management and the Committee were looming, was extremely difficult and completely atypical

for the vast majority of chapter 11 cases. Movant believes that despite all of the turmoil

experienced in the Chapter 11 Case, but for Movant's efforts, there would have been even further

increases in the costs of administration and significant losses in asset values.

## C.   **Current Status of the Case**

The Debtor has now sold substantially all of its assets, including all operating assets and a

residential condominium located in Florida, and has otherwise wound down its affairs through the

assistance of Movant, as set forth in detail herein. An Amended Plan of Liquidation proposed by

the Committee has been confirmed and is currently in effect.  Under the Amended Plan of

Liquidation, the primary remaining asset of the post-confirmation estate is an adversary

proceeding commenced by the Committee against certain insiders of the Debtor.  Movant has not

rendered services to the Debtor or any party in that ligation and therefore seeks no compensation

for that aspect of the Chapter 11 Case.  The services Movant has rendered for the Debtor are set

forth in detail below.

## III.
## LEGAL SERVICES RENDERED

For ease of reference, Movant has identified and set forth six (6) categories of legal

services: (1) Administrative; (2) Cash Collateral / Operational Funding; (3) Asset Sale Efforts; (4)

Common Carrier Issues; (5) Plan of Reorganization; and (6) Fee Petition . Each category contains

a narrative of the matters involved; a general description of the tasks performed; detailed time

records in chronological order, with each attorney's time described therein, and the nature and

purpose of such entries; and the result achieved or benefit to the estate, as required by In re

Wildman, 72 B.R. 700 (Bankr. N.D. Ill. 1987); In re Pettibone Corporation, 74 B.R. 293 (Bankr.

N.D. Ill. 1987); and Matter of Continental Illinois Securities Litigation, 962 F.2d 566 (7th Cir.

1992).

For ease of review, all legal services described in this Motion will be summarized as

follows: (1) the first chart which is set forth below, reflects, on a monthly basis, the services

rendered by category as evidenced by the Monthly Statements attached as **Exhibits 1 - 12** hereto,

covering the period of January 13, 2009 through February 28, 2008, and the Final Period reflected

in **Exhibit 13** covering March 1, 2009 through April 23, 2009 for which no monthly payment

requests were made; and (2) prior to the discussion of each individual category of services

rendered which follow, the second group of charts will reflect the total of all of the services

rendered in that category by Movant by attorney during the entire Chapter 11 Period.

As indicated by the above-referenced charts and the support for same, the majority of the

time expended in this case was rendered by Chad H. Gettleman and Adam P. Silverman.

However, the difficulties in the Chapter 11 Case and the constant need for an almost daily

participation in numerous issues required the services of two additional members of Movant,

Henry B. Merens and Steven B. Chaiken.  The complexities of the Chapter 11 Case required the

time and attention of Messrs. Gettleman and Silverman, to, at often times, the almost total

preclusion of other matters.  The efforts required and expended by members of Movant during the

Chapter 11 Period amply supports the allowance of final compensation requested herein.

The total of all services rendered during the Chapter 11 Period by month and category,

may be summarized as follows:

## CHAPTER 11 PERIOD
### (February 13, 2008 - April 23, 2009)

| DESCRIPTION | TOTAL HOURS | TIME VALUE |
|---|---|---|
| **A.**     **Administrative Matters** | | |
| (1) Feb 13 - Mar 30, 2008 | 148.30 | $  59,688.50 |
| (2) April 2008 | 65.30 | $  26,235.00 |
| (3) May 2008 | 15.40 | $  6,427.50 |
| (4) June 2008 | 55.30 | $  22,785.00 |
| (5) July 2008 | 16.10 | $  6,309.50 |
| (6) August 2008 | 27.20 | $  10,390.00 |
| (7) September 2008 | 15.00 | $  5,868.50 |
| (8) October 2008 | 11.70 | $  4,554.00 |
| (9) November 2008 | 11.50 | $  4,433.00 |
| (10) December 2008 | 8.50 | $  3,284.00 |
| (11) January 2009 | 17.70 | $  6,818.00 |
| (12) February 2009 | 30.50 | $  11,797.50 |
| (13) March 1 - April 23, 2009 | 7.50 | $  2,898.50 |
| **TOTAL CATEGORY A** | **430.00** | **$  171,489.00** |

| DESCRIPTION | TOTAL HOURS | TIME VALUE |
|---|---|---|
| **B.**    **Cash Collateral / Operational Funding Financing** | | |
| (1) Feb 13 - Mar 30, 2008 | 32.60 | $  12,837.00 |
| (2) April 2008 | 1.00 | $  412.50 |
| (3) May 2008 | 0.00 | $  0.00 |
| (4) June 2008 | 0.00 | $  0.00 |
| (5) July 2008 | 0.00 | $  0.00 |
| (6) August 2008 | 0.00 | $  0.00 |
| (7) September 2008 | 0.00 | $  0.00 |
| (8) October 2008 | 0.00 | $  0.00 |
| (9) November 2008 | 0.00 | $  0.00 |

| DESCRIPTION | TOTAL HOURS | TIME VALUE | |
|---|---|---|---|
| **B.**   **Cash Collateral / Operational Funding Financing** | | | |
| (10) December 2008 | 0.00 | $ | 0.00 |
| (11) January 2009 | 0.00 | $ | 0.00 |
| (12) February 2009 | 0.00 | $ | 0.00 |
| (13) March 1 - April 23, 2009 | 0.00 | $ | 0.00 |
| **TOTAL CATEGORY B** | **33.60** | **$** | **13,249.50** |

| DESCRIPTION | TOTAL HOURS | TIME VALUE | |
|---|---|---|---|
| **C.**   **Asset Sale Efforts** | | | |
| (1) Feb 13 - Mar 30, 2008 | 65.50 | $ | 26,757.50 |
| (2) April 2008 | 102.60 | $ | 42,550.50 |
| (3) May 2008 | 115.80 | $ | 46,832.50 |
| (4) June 2008 | 43.70 | $ | 17,580.00 |
| (5) July 2008 | 32.20 | $ | 12,683.00 |
| (6) August 2008 | 8.30 | $ | 3,212.00 |
| (7) September 2008 | 0.70 | $ | 269.50 |
| (8) October 2008 | 0.00 | $ | 0.00 |
| (9) November 2008 | 0.00 | $ | 0.00 |
| (10) December 2008 | 0.00 | $ | 0.00 |
| (11) January 2009 | 0.00 | $ | 0.00 |
| (12) February 2009 | 0.00 | $ | 0.00 |
| (13) March 1 - April 23, 2009 | 0.00 | $ | 0.00 |
| **TOTAL CATEGORY C** | **368.80** | **$** | **149,885.00** |

| DESCRIPTION | TOTAL HOURS | TIME VALUE | |
|---|---|---|---|
| **D.**   **Common Carrier Issues** | | | |
| (1) Feb 13 - Mar 30, 2008 | 28.70 | $ | 11,275.00 |
| (2) April 2008 | 1.00 | $ | 385.00 |
| (3) May 2008 | 1.10 | $ | 423.50 |
| (4) June 2008 | 0.20 | $ | 88.00 |

| DESCRIPTION | TOTAL HOURS | TIME VALUE | |
|---|---|---|---|
| **D.**   **Common Carrier Issues** | | | |
| (5) July 2008 | 0.00 | $ | 0.00 |
| (6) August 2008 | 8.00 | $ | 3,080.00 |
| (7) September 2008 | 15.80 | $ | 6,088.50 |
| (8) October 2008 | 1.70 | $ | 654.50 |
| (9) November 2008 | 0.00 | $ | 0.00 |
| (10) December 2008 | 0.00 | $ | 0.00 |
| (11) January 2009 | 0.00 | $ | 0.00 |
| (12) February 2009 | 0.00 | $ | 0.00 |
| (13) March 1 - April 23, 2009 | 0.00 | $ | 0.00 |
| **TOTAL CATEGORY D** | 56.50 | $ | 21,994.50 |

| DESCRIPTION | TOTAL HOURS | TIME VALUE | |
|---|---|---|---|
| **E.**   **Plan of Reorganization** | | | |
| (1) Feb 13 - Mar 30, 2008 | 0.30 | $ | 132.00 |
| (2) April 2008 | 0.00 | $ | 0.00 |
| (3) May 2008 | 0.80 | $ | 352.00 |
| (4) June 2008 | 1.20 | $ | 465.00 |
| (5) July 2008 | 0.60 | $ | 264.00 |
| (6) August 2008 | 0.00 | $ | 0.00 |
| (7) September 2008 | 1.60 | $ | 632.50 |
| (8) October 2008 | 5.40 | $ | 2,139.50 |
| (9) November 2008 | 0.20 | $ | 88.00 |
| (10) December 2008 | 0.40 | $ | 154.00 |
| (11) January 2009 | 0.60 | $ | 231.00 |
| (12) February 2009 | 0.30 | $ | 115.50 |
| (13) March 1 - April 23, 2009 | 0.00 | $ | 0.00 |
| **TOTAL CATEGORY E** | 11.40 | $ | 4,573.50 |

| DESCRIPTION | TOTAL HOURS | TIME VALUE |
|---|---|---|
| **F.**    **Fee Petition Preparation** | | |
| (1) Feb 13 - Mar 30, 2008 | 0.00 | $ 0.00 |
| (2) April 2008 | 3.90 | $ 1,633.50 |
| (3) May 2008 | 1.00 | $ 440.00 |
| (4) June 2008 | 1.30 | $ 572.00 |
| (5) July 2008 | 0.00 | $ 0.00 |
| (6) August 2008 | 0.70 | $ 269.50 |
| (7) September 2008 | 0.60 | $ 231.00 |
| (8) October 2008 | 0.40 | $ 154.00 |
| (9) November 2008 | 0.00 | $ 0.00 |
| (10) December 2008 | 0.00 | $ 0.00 |
| (11) January 2009 | 1.50 | $ 577.50 |
| (12) February 2009 | 2.70 | $ 1,039.50 |
| (13) March 1 - April 23, 2009 | 35.80 | $ 14,228.50 |
| **TOTAL CATEGORY F** | **47.90** | **$ 19,145.50** |
| **TOTAL ALL CATEGORIES** | **948.20** | **$ 380,337.00** |

## A. ADMINISTRATIVE MATTERS

### Services Rendered During the Chapter 11 Period

| Attorney | Hours | Rate | Value |
|---|---|---|---|
| CHG | 118.00 | $440 | $ 51,920.00 |
| HBM | 2.50 | $440 | $ 1,100.00 |
| APS | 304.40 | $385 | $ 117,194.00 |
| SBC | 5.10 | $250 | $ 1,275.00 |
| TOTAL | 430.00 | | $ 171,489.00 |

Movant expended approximately 430.00 hours during the during the entire Chapter 11

Period (see all Exhibit (A) tabs attached hereto) in connection with the performance of the debtor