IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | Chapter 11 |
| | ) | |
| HEARTHSIDE BAKING CO., INC. | ) | Case No. 08-01187 |
| d/b/a MAURICE LENELL COOKY | ) | |
| COMPANY, | ) | Honorable Jacqueline P. Cox |
| | ) | |
| Debtor. | ) | Hearing Date and Time: |
| | ) | June 9, 2009 at 9:30 a.m. |

## NOTICE OF MOTION

TO: Attached Service List

    **PLEASE TAKE NOTICE** that on Tuesday, the 9th day of June, 2009, at the hour of 9:30 a.m., we shall appear before the Honorable Jacqueline P. Cox, United States Bankruptcy Judge for the Northern District of Illinois, or any Judge sitting in her place and stead, in courtroom 619 of the United States Courthouse, 219 South Dearborn Street, Chicago, Illinois, and then and there present the **MOTION OF KIPNIS, ROSEN & BLOOM, LTD. FOR ALLOWANCE OF FINAL COMPENSATION AS ACCOUNTANTS TO HEARTHSIDE BAKING CO., INC. D/B/A/ MAURICE LENELL COOKY COMPANY, DEBTOR IN POSSESSION** (the "**Motion**"), a copy of which is attached hereto and hereby served upon you.

                                          CHAD H. GETTLEMAN, ESQ. (ARDC #944858)
                                          ADAM P. SILVERMAN, ESQ. (ARDC #6256676)
                                          ADELMAN & GETTLEMAN, LTD.
                                          53 West Jackson Boulevard, Suite 1050
                                          Chicago, Illinois 60604
                                          312/435-1050

## CERTIFICATE OF SERVICE

    I hereby certify that a true copy of this Notice of Motion and the Motion referred to herein have been served upon the persons listed on the attached service list as indicated on the 23rd day of April, 2009.

                                                            /s/ Adam P. Silverman
                                                            Adam P. Silverman, Esq.

82785.1 4/23/09

## SERVICE LIST

**VIA ECF AND FACSIMILE**
Richard C. Friedman, Esq.
Office of the United States Trustee
Dirksen Federal Court House
219 South Dearborn Street, Suite 873
Chicago, IL 60604
Fax: (312) 886-5794
Email: richard.c.friedman@usdoj.gov

Joseph D. Frank, Esq.
Jeremy C Kleinman, Esq.
Frank/Gecker LLP
325 N. LaSalle St., Suite 625
Chicago, IL 60610
Fax: (312) 276-0035
Email: jfrank@fgllp.com
       Jkleinman@fgllp.com

Robert D. Nachman, Esq.
Martin W. Salzman, Esq.
Morgan M. Smith, Esq.
Dykema Gossett PLLC
10 South Wacker Dr., Suite 2300
Chicago, IL 60606
Fax: (312) 876-1155
Email: rnachman@dykema.com
       msalzman@dykema.com
       mmsmith@dykema.com

Richard C. Perna, Esq.
Tejal S. Desai, Esq.
Fuchs & Roselli, Ltd.
440 W. Randolph Street, Suite 500
Chicago, Illinois 60606
Fax (312) 651-2499
Email: tdesai@frltd.com

**VIA FIRST CLASS US MAIL**
**(Deposited in Post Office 4/24/09)**

Thomas J. Verticchio, Esq.
Swanson, Martin & Bell, LLP
330 N. Wabash Ave., Suite 3300
Chicago, IL 60611
Fax: (312) 321-0990
Email: tverticchio@smbtrials.com

Stephen Scallan, Esq.
Michael Cohen, Esq.
Staes & Scallan, PC
111 W. Washington St., Suite 1310
Chicago, IL 60602
Fax: (312) 201-9233
Email: stevescallan@covad.net
       mcohen@staesandscallan.com

Robert A. Langendorf, Esq.
Robert A. Langendorf PC
134 N. LaSalle St., Suite 1515
Chicago, IL 60602
Fax: (312) 377-1771
Email: rlangendorf@comcast.net

Alan R. Dolinko, Esq.
Robinson Curley & Clayton, PC
300 S. Wacker Dr., Suite 1700
Chicago, IL 60606
Fax: (312) 663-0303
Email: adolinko@robinsoncurley.com

Monte L. Mann, Esq.
John Shonkwiler, Esq.
Novak and Macey, LLP
100 N. Riverside Plaza
Chicago, IL 60606
Fax: (312) 419-6928
Email: mmann@novackandmacey.com
       Jfs@novackandmacey.com

Bruce L. Wald, Esq.
Jeffrey B. Rose Esq.
Tishler & Wald, Ltd.
200 S. Wacker Drive, Suite 3000
Chicago, Illinois 60606
Fax: (312) 876-3816
Email: bwald@tishlerandwald.com
       Jrose@tishlerandwald.com

Hearthside Baking Co., Inc.
c/o Terry J. Cohen
3345 Sunset Trail
Northbrook, IL 60062
Email: t.cohen@comcast.net

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | Chapter 11 |
| | ) | |
| HEARTHSIDE BAKING CO., INC. | ) | Case No. 08-01187 |
| d/b/a MAURICE LENELL COOKY | ) | |
| COMPANY, | ) | Honorable Jacqueline P. Cox |
| | ) | |
| Debtor. | ) | |

MOTION OF KIPNIS, ROSEN & BLOOM, LTD.
FOR ALLOWANCE OF FINAL COMPENSATION AS ACCOUNTANTS
TO HEARTHSIDE BAKING CO., INC. D/B/A/ MAURICE LENELL
COOKY COMPANY, AS DEBTOR IN POSSESSION

TO:    THE HONORABLE JACQUELINE P. COX,
       U.S. BANKRUPTCY JUDGE:

Now come Richard Rosen, C.P.A., and Jay Patel, C.P.A. on behalf of the accounting firm of Kipnis, Rosen & Bloom, Ltd. ("**Movant**"), court appointed accountants to Hearthside Baking Co., Inc. d/b/a Maurice Lenell Cooky Company, an Illinois corporation, debtor herein (the "**Debtor**"), and requests the entry of an order for the allowance and payment of final compensation[1] as accountants to the Debtor during the pendency of this case under Chapter 11 of the United States Bankruptcy Code, pursuant to Section 330 of the Bankruptcy Code and Bankruptcy Rule 2016, and in support thereof, respectfully states as follows:

1.    On January 18, 2008, an involuntary petition under Chapter 7 of the Bankruptcy Code was filed against the Debtor by various petitioning creditors (the "**Involuntary Case**").

2.    On February 13, 2008, the Involuntary Case was voluntarily converted by the Debtor to a case under Chapter 11 of the Code (the "**Chapter 11 Case**").

---

[1] Movant does not seek reimbursement of expenses.

82741.2 4/23/09                                    1

3. On March 13, 2008, this Court authorized the Debtor to retain Movant as its accountants to represent the Debtor in connection with the its day-to-day accounting and financial issues, as well as the Debtor's duties under the Bankruptcy Code, effective as of February 13, 2009. Those tasks included, but were not limited to, the following

(a) prepare a budget to be followed in the Chapter 11 Case;

(b) explain, substantiate, and provide documentary support for line items in the budget;

(c) work with the Debtor and its counsel, the Creditors' Committee in the Chapter 11 Case ("**Committee**") and its counsel, and prospective purchasers of the Debtor's assets on all matters relating the budget, monthly and annual financial statements, profit and loss statements, and other financial and accounting-related information;

(d) prepare and issue financial statements as necessary;

(e) prepare and file all required federal, state and local income tax returns for the Debtor;

(f) assist the Debtor in preparing its monthly operating reports; and

(g) answer inquiries on specific tax matters that arose during the Chapter 11 Case.

4. At the time Movant was retained, the Debtor owed Movant the total sum of $42,292.50, which Movant agreed to waive as a condition to its employment. Movant had been rendering accounting services to the Debtor for over ten years and was the most logical and cost effective choice to continue providing accounting services within the Chapter 11 Case.

82741.2 4/23/09                                    2

5. Movant has not filed any prior motions for the allowance of interim compensation in the Chapter 11 Case. However, pursuant to that certain *Order Establishing Procedures for the Payment of Monthly Interim Compensation and Reimbursement of Expenses of Professionals* entered in the Chapter 11 Case on March 13, 2008, all court appointed professionals for the Debtor, including Movant, were entitled to submit and receive payment on monthly invoices beginning with services rendered from and after the commencement of the Chapter 11 Case, provided that no timely objections were filed ("**Monthly Payment Order**"). To that end, as more fully described below, and pursuant to the Monthly Payment Order, Movant received monthly payments totaling $90,589.75 of fees and expenses (collectively, the "**Monthly Payments**"). As of the commencement of the Chapter 11 Case, Movant held a prepayment in the amount of $25,000 from the Debtor for services to be rendered. This prepayment has been applied to Movant's first monthly payment pursuant to the Monthly Payment Order and is therefore included in calculation of the $90,589.75 received by Movant.

6. Attached hereto as **Exhibits 1-19** and by express reference made a part hereof are detailed invoices describing the accounting services rendered by Movant for the Debtor from February 13, 2008 through and including April 23, 2009[2]. The professional services reflected therein for which compensation is sought totals $106,026.37, provided, however, that Movant only seeks payment of the balance owing of $15,436.62, which sum includes the amount of $5,500 to complete 2009 state and federal fiscal year end tax returns, as more fully described below.

---

[2]The Invoices reflect that services were performed by Movant during the gap period between the Involuntary Case and the Chapter 11 Case, for which Movant seeks compensation to be approved herein.

82741.2 4/23/09                         3

7. In reviewing this Motion, Movant believes it is important to note certain aspects of this Chapter 11 Case which necessitated additional services being required and also certain billing procedures typically utilized by Movant in the rendition of professional accounting services to its clients, including the Debtor in the Chapter 11 Case:

(a) Movant typically bills on a per project basis and as such, does not charge for each and every task that it has rendered for a given project such as preparing a bank reconciliation or financial statement or numerous other related matters. Movant engaged in numerous telephone calls and other shorter tasks throughout the Chapter 11 Case for which it does not seek compensation and did not include in its monthly statements;

(b) Movant does not charge for travel time to and from the client's facility notwithstanding that Movant was required to perform certain of their services on site at the Debtor's offices due to the Debtor's limited accounting systems;

(c) Movant does not charge for the preparation and review of the Statement of Services as is generally authorized by this Court;

(d) Movant does not charge for any out of pocket disbursements, such as copying charges, postage, delivery services, long distance or conference call telephone charges;

(e) Significant additional efforts were required by Movant due to the lack of internal accounting personnel and systems at the Debtor. The Debtor's counsel believes that Movant's assistance was absolutely invaluable to the

Debtor's efforts to maintain its books and records and perform its duties as debtor in possession, and that Movant performed only what it was asked to perform by the Debtor and its counsel. It should be recognized that the employment of the necessary accounting personnel at the Debtor would likely have exceeded the costs incurred by Movant when all employee benefits were included. Also, given the very short operational phase of this Chapter 11 Case, the Debtor's employment of capable internal accounting personnel was not readily available; and

(f) Movant inadvertently utilized a $110/hour billing rate for Jay Patel for services he rendered on 5/16/08 and 5/28/08 instead of Mr. Patel's customary $150/hour billing rate, resulting in $620.00 of fees that are not reflected in the attached Statement of Services. As an accommodation to the estate, Movant has agreed not to correct this error, thus resulting in a further $620.00 saving to the estate.

8. During the approximate fourteen month period of Movant's engagement for the Debtor in the Chapter 11 Case, the accounting services performed by Movant on behalf of the Debtor can be broken down into five primary categories and summarized as follows:

(a) Budget and Cash Flow Analysis: Movant assisted the Debtor with the preparation of a budget and cash flow analysis early in the Chapter 11 Case. Movant performed these services at the request of the Debtor and to accommodate the requests of the Committee, which had taken an active role since the inception of the Chapter 11 Case. In addition to preparing these items, Movant was often called upon by Debtor's counsel for substantiation and verification of the line items in the budget, which Movant timely provided to counsel. Frequently, the method of communications involved multiple e-mails or telephone calls for which

        Movant has not billed on a per e-mail or per phone call basis or otherwise;

(b)    <u>Bankruptcy Schedules; Statement of Financial Affairs; and Related Documents (collectively, the "**Schedules**")</u>. Movant devoted significant efforts in assisting the Debtor so it was able to timely prepare and file the Schedules. This required a lengthy review of a multitude of records and documents in order to accurately reflect the Debtor's assets, liabilities and financial condition and complete this sizeable task properly. Moreover, the Debtor's lack of organizational support and a limited management system rendered preparation of Schedules extremely difficult for Movant. Often, Movant was unable to get organized, complete, and reliable documents from the Debtor's systems, or was provided information based solely upon the recollections of the Debtor's management. Movant was then required to interpret and verify these documents and information to the best of Movant's ability under the circumstances. Had the Debtor maintained a full-time, experienced CFO, Movant believes it would not have had to dedicate as much time to Schedule preparation as it did. Additionally, the acting CFO lived in Florida and only occasionally worked from the Debtor's facility. Although the acting CFO attempted to provide information via computer, it readily became unrealistic to expect Movant or anyone else to digest Debtor's unusual style of record keeping for a company its size under the time constraints involved with filing the Schedules. As a result of having provided accounting services to the Debtor for over ten years, Movant was often able to provide Debtor and its counsel with the back-up information and supporting documents necessary to prepare the Schedules in a professional and credible manner that the Debtor could not locate and, which Movant asserts would not have been possible but for the significant involvement of Movant. Between the collective efforts of Movant and the Debtor's counsel, the Debtor was able to file meaningful, accurate, and complete Schedules. Again, Movant participated in numerous conference calls and reviews of multiple drafts of the Schedules but does not seek compensation for each and every telephone call or e-mail with the Debtor or its counsel;

(c)    <u>Asset Sale Efforts</u>. Movant worked with the Debtor, counsel to the Debtor, and EPI (the Debtor's court appointed business broker) to ensure that all prospective purchasers had the necessary financial data for the Debtor's operations to properly assess their interests and thereby promoted competitive bidding at an auction sale of the Debtor's assets. Notably, Movant was required to assist the Debtor in getting its financial books and records in a format which was sufficient for the marketing efforts of the Debtor and EPI. Moreover, Movant was involved in the closing of the asset sale, in that Movant worked to ascertain the accuracy of the Debtor's

82741.2 4/23/09                         6

pre-and-post petition receivables, and to the extent possible, the Debtor's inventory, as the Debtor's accounting system had been recently changed and the Debtor had not reconciled its accounts receivable ledger;

(d) Collection of Receivables. After the sale of the Debtor's assets, Movant assisted the Debtor's counsel in the collection of the outstanding receivables owing to the Debtor. Here again, the Debtor's computer accounting system and its lack of an experienced chief financial officer required Movant to expend a significant amount of time in helping to verify which accounts receivable were outstanding and which had been paid. Verification was a difficult task, as the Debtor's accounts payable ledgers had not been reconciled by the Debtor's internal accounting personnel during the Debtor's transition from one accounting system to another. Further, the timing and nature in which the Debtor's customers applied offsets, particular the Debtor's "big-box" customers, required significant examination to comprehend and verify. By the time these receivables were to be collected, the Debtor's operations had ceased, and Movant and the Debtor's counsel were essentially required to perform all tasks that an accounts receivable department or CFO would ordinarily oversee. Without the Debtor's employees to provide traditional back-up, this task took on enormous proportions. Ultimately, Movant helped in reviewing and assembling back-up information needed for multiple demand letters to be issued by the Debtor's counsel in connection therewith. Thereafter, Movant assisted the Debtor's counsel where necessary to verify information provided by the Debtor's customers with evidence of prior payment; a basis for offset; a challenge to the accuracy of the purchase order, invoice or delivery; or on that rare occasion, payment in full;

(e) Payroll and Sales Tax Returns. The Debtor's lack of internal accounting personnel required Movant to prepare all payroll and sales tax returns incurred by the Debtor in the ordinary course of its business. This included various government forms as well forms necessary for the Debtor's employees to prepare and file their own personal tax returns. Movant also ensured that all tax liabilities of the Debtor were promptly paid;

(f) Account Reconciliation. Again, the Debtor's lack of internal accounting personnel required that on a monthly basis, Movant reconciled the Debtor's bank account statement and updated its internal accounts receivable ledger and general ledger. Movant expended significant time performing this task, ensuring each month that the Debtor's bank account statements matched the Debtor's internal financial data, which was a

critical component of preparing detailed and accurate Operating Reports. Movant' services were greatly relied upon by the Debtor and its counsel in this regard, and Movant asserts that but for its efforts, the Debtor would have incurred significantly greater costs and expenses to prepare the Operating Reports; and

(g) <u>Operating Reports</u>. Movant was instrumental in the timely preparation of the debtor in possession operating reports and other financial statements as well as rendering the necessary assistance to the Debtor as required regarding same. Again, the Debtor's lack of a full-time, experienced chief financial officer and other sophisticated financial personnel mandated that Movant actively participate in the preparation and verification of the Debtor's Operating Reports. In addition, the Debtor's inventory and accounts receivable had not truly been reconciled by the Debtor as a result of the implementation of its new computer accounting system, requiring Movant to utilize information that was not objectively verifiable, but rather was accrued in the Debtor's combined information management systems. Movant was frequently and repeatedly called upon by the Debtor, its counsel, and the counsel to the Committee to verify the information set forth in the Operating Reports, and in many cases, provide and explain the information and/or documents and supporting same.

9. During the approximate fourteen month period for which the above referenced services were rendered, Movant has brought to bear on the matters addressed, the collective skill and experience of its following members at the following rates: (a) Richard Rosen, a CPA and partner in Movant with over 33 years of public accounting experience, at the rate of $300 / hour; (b) Jay Patel, a senior staff accountant with many years of accounting experience at the rate of $150 / hour; and (c) Suresh Sura, a staff accountant at $100 / hour.

10. By way of this Motion for allowance of final fees, Movant is also requesting that its estimated future services totaling $5,500.00 for preparing and filing final state and federal tax returns for the Debtor for fiscal year ending June 30, 2009, be allowed at this time, without further order of Court, in order to save further expense and delay, and be remitted to Movant after said tax returns are prepared and filed.

82741.2 4/23/09                                8

11. In summary, by this Motion, Movant is requesting final allowance of its fees incurred (and to be incurred) in this Chapter 11 Case totaling $106,026.37 (of which additional compensation sought to be actually paid totals only $15,436.62), consisting of those professional accounting services rendered from February 13, 2008 through April 23, 2009 (and, as noted, during the gap period), and those fees for services to be rendered in the future to file final tax returns, which Movant will limit to $5,500.00.

12. All of the accounting services for which compensation is sought were performed for and on behalf of the Debtor and not on behalf of any committee, creditor or other person in the Chapter 11 Case. Movant, as a small accounting firm, has limited resources to maintain and prepare time entries in its computer system in a manner to which this Court may be accustomed. Movant requests that the entries it has submitted be deemed reasonable and appropriate under the circumstances.

13. No agreement or understanding exists between Movant or any other person, firm or entity for the sharing of the compensation to be received from services rendered in connection with this Chapter 11 Case, except agreements for the sharing of compensation between Movant's members, associates and employees.

14. The accounting services rendered in this Chapter 11 Case by Movant were actual, reasonable and necessary, and have contributed to the efficient administration of the Chapter 11 Case. All of the time devoted by Movant is compensable by virtue of Bankruptcy Rule 2016.

82741.2 4/23/09                                          9

      WHEREFORE, Richard Rosen, C.P.A., on behalf of the accounting firm of Kipnis Rosen and Bloom, Ltd. prays for the entry of an order: (a) allowing final compensation as requested herein; (b) authorizing and directing payment of the additional amounts requested herein as and when funds are available for such payment; and (c) that this Court award such other and further relief as is just.

      Respectfully submitted,

KIPNIS, ROSEN, & BLOOM, LTD.

By: _____
    Its Authorized Representative

KIPNIS, ROSEN & BLOOM, LTD.
5550 W. Touhy Ave.
Suite 300
Skokie, IL 60077


CHAD H. GETTLEMAN, ESQ. (ARDC #944858)
ADAM P. SILVERMAN, ESQ. (ARDC #6256676)
ADELMAN & GETTLEMAN, LTD.
53 West Jackson Blvd., Suite 1050
Chicago, Illinois 60604
(312) 435-1050

Attorneys for Debtor

82741 2 4/23/09              10